IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

XANDER FLORENTINO,

        Petitioner,

v.                                                              CV 13-0039 RB/WPL

RAY TERRY,

        Respondent.

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

       Xander Florentino, acting pro se, filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2241 challenging his immigration detention on four grounds. (Doc. 1.)[1] Ray Terry,

Warden of the Otero County Processing Center, moved to dismiss Florentino's petition for lack

of jurisdiction and failure to state a claim. (Doc. 8.) The Court referred this case to me to make

findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 5.) Having

---

    [1] This Court has recently received six petitions for habeas corpus, including Florentino's, which are written in identical handwriting, cite the same cases, and contain similar theories of relief. *Compare Florentino v. Terry*, No. CV 13-0039 RB/WPL, Doc. 1 (D.N.M. Jan. 14, 2013), *with Rodriguez-Espino v. Terry*, No. CV 13-0040 JB/ACT Doc. 1 (D.N.M. Jan. 11, 2013), *Saenz v. Terry*, No. CV 12-1263 RB/CG, Doc. 1 (D.N.M. Dec. 6, 2012), *Aguilar v. Terry*, No. CV 12-1253 WJ/SMV, Doc. 1 (D.N.M. Dec. 3, 2012), *Provincia v. Terry*, No. CV 12-1235 WJ/CG, Doc. 1 (D.N.M. Nov. 29, 2012), *and Rodas Lopez v. Terry*, No. CV 12-0726 LH/WPL, Doc. 1 (D.N.M. July 3, 2012). Based on the handwriting and prose, I have reason to believe that the ghost writer behind these petitions is Roque Aranda Tercero. *See, e.g., Tercero v. Holder, et al.*, No. CV 11-1035 JCH/SMV, Doc. 1 (D.N.M. Nov. 21, 2011). Tercero "is no stranger to our judicial system: 'He has a long history of criminal activity and of abusive litigation in many courts.'" *Tercero v. Holder*, 2013 U.S. App. LEXIS 2892, *2 (10th Cir. Feb. 12, 2013) (unpublished) (citing *Tercero v. Holder*, No. CV 12-0246 RB/KBM Doc. 56 (D.N.M. Oct. 4, 2012)).

    Given Tercero's history in this District, I was not surprised to discover that he has taken it upon himself to "assist" other detainees at the Otero County Processing Center. Since an inmate cannot be prohibited from assisting other inmates with legal work if the facility does not provide a reasonable alternative, *see Johnson v. Avery*, 393 U.S. 483, 490 (1969), I will not prohibit him from providing assistance. However, I caution Florentino and the others: Tercero is not an attorney, he is not licensed to practice law, and he demonstrates a poor understanding of the law in his pleadings. Detainees should not consult Tercero in place of a qualified attorney. Additionally, Tercero may not lawfully charge for any legal service. *Gometz v. Henman*, 807 F.2d 113, 115 (7th Cir. 1986).

reviewed the pleadings, record, and relevant law, I recommend that the Court grant the Terry's motion to dismiss and deny Florentino's petition for a writ of habeas corpus.

### FACTUAL & PROCEDURAL BACKGROUND

Florentino is a citizen of the Philippines, and he entered the United States legally with a nonimmigrant visa when he was a child. (Doc. 1 Ex. 2 at 19; Doc. 8 Ex. 2 at 2.) His visa expired on September 19, 2000, but he remained in the United States. (*Id*.) On February 25, 2010, Florentino entered detention without incident for processing. (*Id*.) At the time, he had no criminal record. (*Id*.) He was served with a Notice to Appear and released on bond. (Doc. 1 Ex. 2 at 19-20; Doc. 8 Ex. 1 at 1.)

On April 27, 2010, Florentino was arrested for driving while intoxicated, and he was later convicted and sentenced to seventy-four days in jail. (Doc. 1 Ex. 2 at 19.) After he was released, he was arrested on October 8, 2011, for robbery and conspiracy. (*Id*.) He pled guilty to two misdemeanor charges, battery and attempted false imprisonment (*see id.* at 22), and was released on his own recognizance on August 15, 2012 (*id*. at 19). Two days later he entered the custody of Immigration and Customs Enforcement ("ICE"), a bureau within the Department of Homeland Security ("DHS"), in accordance with the immigration detainer. (*Id*.) He was subsequently transported from Albuquerque, New Mexico, to El Paso, Texas, for processing. (*Id*.)

Florentino's removal proceedings began almost a year before he entered ICE custody.[2] Florentino's first immigration hearing was on August 16, 2011, but he asked to have it continued so he could seek the advice of an attorney. (Doc. 8 at 5.) The Immigration Judge ("IJ") reset the hearing for January 26, 2012. (*Id*.) When the date of the hearing came, Florentino's attorney appeared and informed the IJ that Florentino was incarcerated in Albuquerque, New Mexico, so

---

[2] While the record does not contain all of the documents detailing these proceedings, Terry has provided a complete procedural history in his motion to dismiss and Florentino did not object to his recitation of the facts. (Doc. 8 at 5-6.)

he would not be able to attend. (*Id.*) The hearing was reset for August 7, 2012, and the IJ closed

the case administratively because Florentino was in state custody. (*Id.*; Doc. 1 Ex. 2 at 19.)

On August 27, 2012, after Florentino was released from prison and had been transferred

to El Paso, Texas, the matter was re-calendared. (Doc. 8 at 5.) Florentino appeared pro se before

an IJ on September 25, 2012, and admitted the factual allegations and ground for removability

contained in his Notice to Appear. (*Id.*) The ground in the Notice to Appear was that he had

remained in the United States longer than his visa had permitted. (Doc. 1 Ex. 2 at 20; Doc. 8 Ex.

1 at 1.) At this hearing, Florentino requested time to obtain counsel, and the IJ granted his

request, resetting the matter for a later date. (Doc. 8 at 5.)

On November 15, 2012, Florentino appeared at his hearing without counsel and informed

the immigration court that he was making a claim of United States citizenship. (*Id.*) The IJ

believed that his claim lacked merit but nonetheless reset the hearing to allow Florentino time to

submit the proper documents. (*Id.* at 6.) On November 20, 2012, Florentino appeared before an

IJ and filed an application for citizenship. (*Id.*) The IJ continued the proceedings to permit DHS

time to adjudicate his application. (*Id.*)

A hearing was set for January 15, 2013. (Doc. 1 Ex. 2 at 4; Doc. 8 Ex. 4.) A week prior to

the hearing, Florentino filed a motion for a bond hearing and a motion for a change of venue.

(Doc. 1 Ex. 2 at 4, 7; Doc. 8 Ex. 3; Doc. 8 Ex. 4.) A day after he filed these motions, Florentino

prepared his present petition for a writ of habeas corpus, which was filed on January 14, 2013.

(Doc. 1.)

On January 15, 2013, Florentino appeared at the immigration hearing, and his application

for citizenship was returned to him because it was filed improperly. (Doc. 8 at 6.) He verbally

requested a bond hearing, and the IJ set a hearing for March 5, 2013, although she did not believe he was eligible for bond. (*Id.*)

The same day as Florentino's hearing, I ordered Terry to answer Florentino's petition for habeas corpus (Doc. 4.) Terry filed a motion to dismiss on March 1, 2013 (Doc. 8), but Florentino never filed a response in opposition. Since Florentino did not respond to the motion to dismiss, the record does not contain information regarding the outcome of the bond hearing, nor does it indicate whether the IJ ruled on his motion for a change of venue. For reasons discussed below, I believe that the Court may still consider and rule on the motion to dismiss.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2241, a writ of habeas corpus may issue when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Claims of state law violations are not cognizable in a federal habeas action, *see Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000), nor are challenges to the discretionary decisions of a federal agency, *see Latu v. Ashcroft*, 375 F.3d 1012, 1091 (10th Cir. 2004) (citing 28 U.S.C. § 2241(c)).

Florentino is a pro se litigant, so I must give his habeas petition special consideration. I will construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However,

4

"the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id*.

## DISCUSSION

Florentino challenges his immigration detention on four grounds. First, he challenges the venue, arguing that the selection of El Paso, Texas amounts to unconstitutional "forum shopping" on the part of the United States. (Doc. 1 at 3, 5.) Second, he challenges his detention without a bond hearing, arguing that a court has not found him to be a flight risk or a danger to the community. (*Id*. at 3, 6.) Third, he challenges the length of his detention. (*Id*. at 6.) Lastly, he argues that he was provided ineffective assistance of counsel in his state criminal proceedings because he was allegedly not advised of the impact of his plea on his immigration status. (Doc. 1 at 7.)

## I.      Venue/ Jurisdiction

The Attorney General has the prosecutorial discretion to commence removal proceedings in any location. *Latu*, 375 F.3d at 1019 (citing 8 U.S.C. § 1252(g)). Likewise, an IJ's ruling on a change of venue motion is also discretionary. *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1159 (10th Cir. 2006). Accordingly, challenges to the choice of venue for removal proceedings may not be raised in a habeas petition, since the federal court's jurisdiction is limited to review of violations of federal law or the Constitution, not challenges to discretionary decisions of an agency. *Latu*, 375 F.3d at 1019 (citing 28 U.S.C. §2241(c)).

I lack the jurisdiction to hear Florentino's challenge to the Government's determination to initiate proceedings in El Paso, Texas. Florentino did not wait for a ruling by the immigration court on his motion for a change of venue, rendering it completely unexhausted.[3] Nonetheless, I

---

[3] Despite Florentino's assertions to the contrary (*see* Doc. 1 at 4, 5), he is required to exhaust his administrative remedies prior to bring a petition for habeas corpus. *See Schmitt v. Maurer*, 451 F.3d 1092,

may not consider such a challenge even if it were exhausted because any decision as to venue is also discretionary.

Florentino also appears to challenge the jurisdiction of the immigration court over him personally, since he is being held in Chaparral, New Mexico, which is in the Tenth Circuit, but the immigration court is in El Paso, Texas, which is in the Fifth Circuit. (Doc. 1 at 3.) In support of this proposition, he cites heavily from the first footnote in *Discipio v. Ashcroft*, 417 F.3d 448 (5th Cir. 2005). (Doc. 1 at 3-6.) His reliance on this case is entirely misplaced. In *Discipio*, an IJ held that a Massachusetts conviction that was subsequently overturned was valid for immigration purposes, and he proceeded to order deportation. 417 F.3d at 449. The IJ relied on Fifth Circuit case law in making this determination. The first footnote in this opinion merely clarifies that since the petitioner was being detained in the Fifth Circuit, Fifth Circuit case law applied; if the petitioner had been detained in any other circuit, then the board would not have ordered his deportation because the Fifth Circuit law would not have applied. *Id*. at 449 n.1.

*Discipio* clarifies that immigration courts must apply the law based on where a detainee is housed. The fact that Florentino is being detained in the Tenth Circuit and the immigration court is physically situated in the Fifth Circuit presents no conflict. The IJ has not made a deportation decision, so any consideration of jurisdiction is entirely speculative. Moreover, there is no indication that because the IJ sits in El Paso, he or she will fail to apply the appropriate law. The physical location of the IJ cannot be a basis for habeas relief.

## II.     Bond Hearing

Florentino claims that he has been placed in mandatory detention without a bond hearing and that this violates his due process rights. (Doc. 1 at 6.) However, he made the claim the day

___
1095-96 (10th Cir. 2006). This alone would be grounds to deny his petition, but I also address jurisdiction since it acts as an initial bar to hearing any claims.

after he filed a motion for a bond hearing, hardly giving the immigration court a chance to consider his request. On January 15, 2013, the immigration court set a hearing for March 5, 2013. (Doc. 8 at 6.). Terry properly points out that Florentino's argument is now moot because he has requested relief in the form of a bond hearing, and the immigration court has afforded him that relief by scheduling a hearing. (*Id.* at 7.)

While I do not have records concerning the outcome of the bond hearing, even if it had been denied, I could not review such a decision. The denial of bond is a discretionary decision, *see* 8 U.S.C. § 1226, and as I have already discussed, a federal court may only review constitutional and federal law challenges in a habeas petition, *see* 28 U.S.C. § 2241(c). Should Florentino's motion to be released on bond be denied, he may appeal the decision within the immigration court system, but this claim has no place in a federal habeas petition. *See Mwangi v. Terry*, 465 F. App'x 784, 786-87 (10th Cir. 2012) (unpublished) (finding that the federal court lacks jurisdiction over the IJ's denial of bond and stating that "the Attorney General's exercise of discretion [under Section 1226(a)] is not subject to judicial review" (citing 8 U.S.C. § 1226(e))).

## III.    Length of Detention

It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). However, the Supreme Court has recognized that an alien's detention throughout the proceedings is constitutionally valid. *Demore v. Kim*, 538 U.S. 510, 523, 531 (2003). Indefinite detention is not acceptable. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). The core question in analyzing whether the length of detention of an alien is constitutional rests on the likelihood of actual removal. In *Zadvydas*, the Court held that an alien may be detained "only for a period *reasonably necessary* to secure the alien's removal." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is

no longer authorized by [the] statute." *Id.* at 699. The Court held that six months is a presumptively reasonable period of detention, *see id.* at 701, but after six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*; *see also Clark v. Martinez*, 543 U.S. 371, 378 (2005) (making clear that *Zadvydas* applies to inadmissible aliens).

However, the Court has clarified that detention prior to the issuance of a removal order is permissible. *Demore*, 538 U.S. at 527. Unlike detention after a removal order has been issued, detention during the course of removal proceedings has a specific purpose: "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id*. at 528. Accordingly, detention prior to the issuance of a removal order does not run the same risk of being indefinite, since the alien's "removal remains reasonably foreseeable." *Mwangi*, 465 F. App'x at 787 (citing 8 U.S.C. § 1226(a); *Zadvydas*, 533 U.S. at 697).

Florentino acknowledges the holding of *Demore* (*see* Doc. 1 at 3), but he insists that the length of his detention has been too long to satisfy constitutional requirements. However, the constitutional inquiry is not into the length of the detention, but whether removal is still reasonably foreseeable. Given the procedural history of the case, the immigration court is clearly working towards deportation, so there is no reason to believe that his detention is likely indefinite.

 Not only does Florentino utterly fail to raise a cognizable constitutional claim on this count, but I must note that the length of his detention is of his own making. From the time ICE

took him into custody, Florentino has repeatedly continued the proceedings by filing numerous motions. While it is his right to exhaust all legal avenues available to him, he cannot simultaneously stall his own immigration proceedings and cry foul for want of a finite resolution. The immigration court appears responsive to his claims, so I do not find that there is any constitutional violation arising out of the length of his removal proceedings

## IV.     Ineffective Assistance of Counsel

When a prisoner wishes to challenge the legality of the conviction or the imposition of a sentence, rather than the execution of his sentence, 28 U.S.C. § 2254 provides the Court with jurisdiction. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (citations omitted) ("Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence."). An ineffective assistance of counsel claim at the plea bargaining stage of a state criminal proceeding is a collateral attack on the legality of the conviction and is properly brought as a § 2254 claim, not a § 2241 claim. *Davis v. Roberts*, 425 F.3d 830, 833 (10th Cir. 2005). Florentino's final basis for relief is that defense counsel in his state criminal proceedings misadvised him about the immigration consequences of his plea, and thus his plea was not knowing and voluntary. (Doc. 1 at 7.) I will interpret this claim as a § 2254 petition attacking the legality of his conviction in state court.

A habeas petitioner must give the state courts a fair opportunity to act on his claims prior to filing in federal court in order to satisfy the exhaustion requirement. *See* 28 U.S.C § 2254(c) (2012); *Picard v. Connor*, 404 U.S. 270, 275 (1971). To provide the state court with a fair opportunity, the petitioner must "'fairly present' his claim in each appropriate court." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). Known as the presentation requirement, this

doctrine requires that the petitioner invoke one complete round of the state's appellate review process, including submitting the claims to the state's highest court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Thacker v. Workman*, 678 F.3d 820, 839 (10th Cir. 2012). The state bears the initial burden of asserting exhaustion as a defense, but, once pled, the petitioner bears the burden of showing that he has exhausted all available state court remedies. U.S. R. GOV'G 2254 CASES 5(b); *Picard*, 404 U.S. at 275-76; *Hernandez v. Starbuck*, 69 F.3d 1089, 1091-92 (10th Cir. 1995).

Terry has properly raised exhaustion (Doc. 8 at 4), and Florentino admitted in his petition that he has not exhausted any of his state court remedies (Doc. 1 at 7-8). Thus, this claim is barred by the doctrine of exhaustion.

Additionally, I agree with Terry that Florentino is confused as to the impact of his state court conviction on the basis for his removal. (Doc. 8 at 4.) ICE has based Florentino's removability on having remained in the United States illegally after his nonimmigrant K-2 Visa expired. (Doc. 1 Ex. 2 at 20; Doc. 8 Ex. 1 at 1.) Even without his state court conviction, Florentino would be subject to deportation, so he could not have been prejudiced by his counsel's advice regarding the impact of his criminal case on his immigration status.

## CONCLUSION

Florentino has failed to exhaust all his claims and has challenged the discretionary decisions of the Attorney General and of the IJ, which renders his petition outside of this Court's jurisdiction. Additionally, he has failed to allege facts that state a constitutional violation. Accordingly, I recommend that the Court grant Terry's motion to dismiss and dismiss Florentino's petition with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

William P. Lynch
United States Magistrate Judge